## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**KOLETA ANDERSON,** Individually and on )
Behalf of All Others Similarly Situated )
6310 Snow Chief Court )
Upper Marlboro, Maryland 20772 )
Prince George's County, )
                                                    )
                           Plaintiff, )
                                                    )
    vs. )   No. _____
                                                    )
**BURGER KING CORPORATION** )   JURY TRIAL DEMANDED
5505 Blue Lagoon Drive )
Miami, Florida 33126 )
      Serve On: )
      The Corporation Trust Incorporated )
      351 West Camden Street )
      Baltimore, Maryland 21201-7912, )
                                                    )
                     Defendant. )
                                                    )
_____ )

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Koleta Anderson ("Plaintiff"), individually and on behalf of all others similarly

situated, brings this Class Action Complaint against defendant Burger King Corporation ("Burger

King," the "Company," or "Defendant") and alleges, based upon personal knowledge as to Plaintiff

and Plaintiff's own acts, and on information and belief as to all other matters based upon, *inter alia*,

the investigation of counsel, as follows:

## NATURE OF THE ACTION

1.      This is a simple case of consumer deception.  Burger King currently runs a coupon

promotion that offers a free Sausage, Egg, & Cheese breakfast sandwich known as a

CROISSAN'WICH® ("Croissan'wich") with the purchase of an initial Croissan'wich:



2.     The terms of Burger King's buy-one-get-one-free ("BOGO") deal are well known to American consumers: buy one product at its standard price, and receive a second for free.  But Burger King's BOGO promotion works a little differently.  When a consumer uses Burger King's BOGO coupon, they are unknowingly forced to pay an ***inflated price*** for the first Croissan'wich they purchase in order to receive the second Croissan'wich for "free."  In other words, without any notice, Burger King charges a ***higher price*** for a Croissan'wich if a consumer presents a BOGO coupon at purchase.

3.     Burger King's nationwide BOGO scheme is deceptive to reasonable consumers who expect that, when using a BOGO coupon at any retail store or restaurant, absent any exclusions or other terms and conditions, they will pay the same regular price for two identical Croissan'wiches as they would pay to purchase a single Croissan'wich.

4.     Burger King's failure to honor the terms of the BOGO coupon by surreptitiously charging consumers an inflated price on the initial Croissan'wich purchase, and/or Burger King's failure to disclose that consumers must purchase a Croissan'wich at an inflated price in order to

receive a second Croissan'wich for free, are unfair and deceptive trade practices in violation of the Maryland Consumer Protection Act, the Virginia Consumer Protection Act, and the Consumer Protection Procedures Act for the District of Columbia. Burger King's failure to honor the terms of its BOGO agreement also constitutes a breach of contract and a breach of the implied covenant of good faith and fair dealing, and Burger King has been unjustly enriched by its conduct.

5.      As more fully detailed below, Plaintiff used Burger King's BOGO coupon to purchase two Croissan'wiches at Burger King locations in both Maryland, Virginia and the District of Columbia. Plaintiff reasonably expected that she would pay the same regular price for two Croissan'wiches as she would for one. On all occasions, however, Burger King charged Plaintiff a higher price for two Croissan'wiches than the price it would have charged Plaintiff to purchase a single Croissan'wich. Further investigation has observed Burger King's BOGO scheme at a location in Lantana, Florida. Upon information and belief, Burger King's BOGO scheme is uniformly operating in all Burger King locations across the country.

6.      As a result of Burger King's deceptive and unfair conduct, breach of contract, and breach of the implied covenant of good faith and fair dealing, Plaintiff and the classes have suffered damages, in that they unknowingly paid more money for a Burger King Croissan'wich than they should have.

7.      Because of the *de minimus* amount of damages suffered by Plaintiff and each class member, a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure is the only mechanism defrauded consumers have to obtain redress for their damages and to put a stop to Burger King's unlawful conduct.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because Plaintiff and Defendant are citizens of different states, there

are more than 100 members of the classes, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

9.      Venue is proper in this District under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

10.      Plaintiff is a citizen and resident of the state of Maryland.  In March 2017, Plaintiff presented a BOGO coupon to purchase a Croissan'wich at a Burger King location in Forestville, Maryland and was charged a price that was higher than the price of a single Croissan'wich.  In April 2017, Plaintiff presented a BOGO coupon to purchase a Croissan'wich at a Burger King location in the District of Columbia and was charged a price that was higher than the price of a single Croissan'wich.  Shortly thereafter, also in April 2017, Plaintiff presented a BOGO coupon to purchase a Croissan'wich at a Burger King location in Virginia and was charged a price that was higher than the price of a single Croissan'wich.

11.      Defendant Burger King is a Florida corporation with its headquarters and principal place of business in Miami, Florida.  According to Burger King's website, Burger King was founded in 1954 and is the second largest fast food hamburger chain in the world, with more than 11 million consumers visiting a Burger King restaurant somewhere in the world every day.  Burger King operates restaurants in Maryland, Virginia, and the District of Columbia.  In 2010, private equity firm 3G Capital of Brazil acquired a majority stake in Burger King, in a deal valued at $3.26 billion, and eventually merged the Company with the Canadian-based doughnut chain Tim Hortons, under the auspices of a new Canadian-based parent company named Restaurant Brands International.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

**I.**    **The Federal Trade Commission's Guidance on the Use of the Word "Free"**

12.    The Federal Trade Commission ("FTC" or "Commission") has long been concerned about businesses using the term "free" in marketing or promotional materials, because that word, which frequently attracts consumers, can easily lead to deception.

13.    Accordingly, over 45 years ago, the FTC published its **"FTC GUIDE CONCERNING USE OF THE WORD 'FREE' AND SIMILAR REPRESENTATIONS."** 36 FR 21517, Part 251 (Nov. 10, 1971) (the "FTC Guide"), which explained, in relevant part:

> (a) General. (1) The offer of "Free" merchandise or service is a promotional device frequently used to attract customers. Providing such merchandise or service with the purchase of some other article or service has often been found to be a useful and valuable marketing tool.
>
> (2) Because the purchasing public continually searches for the best buy, and regards the offer of "Free" merchandise or service to be a special bargain, *all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived*. Representative of the language frequently used in such offers are "Free", "Buy 1-Get 1 Free", "2-for-1 Sale", "50% off with purchase of Two", "1 Sale", etc. . . .
>
> (b) *Meaning of "Free"*. (1) *The public understands that*, except in the case of introductory offers in connection with the sale of a product or service (See paragraph (f) of this section), *an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free". In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, the word "Free" indicates that he is paying nothing for that article and no more than the regular price for the other. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the substitution of inferior merchandise or service, or otherwise.*
>
> (2) The term regular when used with the term price, means the price, in the same quantity, quality and with the same service, at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a "Free" or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30-day period. For consumer products or services which fluctuate in

price, the "regular" price shall be the lowest price at which any substantial sales were made during the aforesaid 30-day period. Except in the case of introductory offers, if no substantial sales were made, in fact, at the "regular" price, a "Free" or similar offer would not be proper.

© Disclosure of conditions. When making "Free" or similar offers all the terms, *conditions and obligations upon which receipt and retention of the "Free" item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood*. Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of "Free" merchandise or service. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset. However, mere notice of the existence of a "Free" offer on the main display panel of a label or package is not precluded provided that (1) the notice does not constitute an offer or identify the item being offered "Free", (2) the notice informs the customer of the location, elsewhere on the package or label, where the disclosures required by this section may be found, (3) no purchase or other such material affirmative act is required in order to discover the terms and conditions of the offer, and (4) the notice and the offer are not otherwise deceptive. . . .

36 FR 21517, §§251.1(a)-(c) (emphasis added).

14.     Thus, it is clear that the FTC proscribes – in no uncertain terms – a merchant from marking up the price of an item that must be purchased in order to receive the free item in a BOGO offer.

15.     Nearly all state consumer protection laws expressly provide that courts are to give due consideration and weight to the FTC's interpretation of the Federal Trade Commission Act, including Maryland's and Florida's.

## II.     Burger King's Deceptive BOGO Scheme to Bilk Consumers

16.     Founded in 1954, Burger King operates over 15,000 restaurants in 100 countries around the globe, nearly half of which are in the United States.

17.     Although Burger King is known most for its hamburgers, the most famous of which being the Whopper®, Burger King also sells many breakfast items, including the Croissan'wich.

18.    Burger King currently runs a coupon promotion that offers a free Croissan'wich with the purchase of an initial Croissan'wich:



19.    As of April 21, 2017, Burger King offered a similar BOGO coupon through its Apple iPhone application:



20.    A reasonable consumer using either of these BOGO coupons at a Burger King location would expect to pay the same regular price for two Croissan'wiches as they would for one.

That is what "free" means, as common sense dictates, and as the FTC has made clear. Contrary to the expectations of reasonable consumers, and without any prior notice, Burger King marks up the price of a Croissan'wich when a customer presents a BOGO coupon.

### III. Plaintiff's Experience at Burger King in Maryland

21.     On March 12, 2017, Plaintiff visited a Burger King in Forestville, Maryland (Store # 12082). Plaintiff ordered a Croissan'wich and presented the following BOGO coupon at purchase:



22.     Plaintiff reasonably expected to pay the regular price for a Croissan'wich and to receive a second Croissan'wich for free.

23.     Plaintiff proceeded to order two Croissan'wiches with the above BOGO coupon, reasonably expecting to pay for the regular price of one Croissan'wich.

24.     As reflected on the following receipt, Plaintiff used the BOGO coupon to purchase a Croissan'wich at 7:58 am and was charged $3.19 for one Croissan'wich:



25.     One minute later, at 7:59 am, Plaintiff purchased another Croissan'wich, without using the BOGO coupon.  This time, however, she was charged only $2.16 for one Croissan'wich:



26.     Based on her reasonable expectations, which are consistent with FTC guidance, Plaintiff expected to pay the same price for a Croissan'wich regardless of whether she took advantage of the BOGO offer.  But, contrary to her reasonable expectations, Burger King charged Plaintiff $1.03 more for a Croissan'wich when she presented a BOGO coupon.

## IV.     Plaintiff's Experience at Burger King in the District of Columbia

27.     Being that the Maryland Burger King that Plaintiff visited could have been an outlier in its deceptive practices, Plaintiff attempted to redeem Burger King's BOGO offer at another location in the District of Columbia.

28.     On April 15, 2017, Plaintiff visited a Burger King on Connecticut Avenue in the District of Columbia (Store # 2902).  Plaintiff ordered a Croissan'wich and presented a BOGO coupon identical to the one she used on March 12, 2017.  Once again, Plaintiff reasonably expected to pay the regular price for a Croissan'wich and to receive a second Croissan'wich for free.

29.     As reflected on the following receipt, Plaintiff used the BOGO coupon to purchase a Croissan'wich at 7:19 am and was charged $4.61 for one Croissan'wich:



30.     Immediately thereafter, Plaintiff purchased another Croissan'wich, without using the BOGO coupon.  This time, however, she was charged only $1.00 for the sandwich:



## V.     **Plaintiff's Experience at Burger King in Virginia**

31.     To confirm the consistency of this practice, Plaintiff attempted to redeem Burger King's BOGO offer at another location in Virginia.

32.     On April 22, 2017, Plaintiff visited a Burger King in Alexandria, Virginia (Store # 11525).  Plaintiff ordered a Croissan'wich and presented a BOGO coupon identical to the one she used on March 12, 2017.  Once again, Plaintiff reasonably expected to pay the regular price for a Croissan'wich and to receive a second Croissan'wich for free.

33.     As reflected on the following receipt, Plaintiff used the BOGO coupon to purchase a Croissan'wich at 8:19 am and was charged $2.99 for one Croissan'wich:



34.     Immediately thereafter, Plaintiff purchased another Croissan'wich, without using the BOGO coupon.  This time, however, she was charged only $1.79 for the Croissan'wich:



## VI.   Plaintiff's Counsel's Independent Investigation in Florida

35.     After Plaintiff observed Burger King's deceptive pattern of overcharging, on April 21, 2017, Plaintiff's counsel sent an investigator to Burger King in Lantana, Florida (Store # 2755) to confirm whether Burger King's deceptive practices were in existence at other Burger King locations.

36.     By purchasing a Croissan'wich, both with and without presenting a BOGO coupon, Plaintiff's counsel's investigator confirmed that, as with the other Burger King locations, the Lantana, Florida location also marks up the price of a single Croissan'wich if a BOGO coupon is presented, without telling customers:



37.    Upon information and belief, including the consistency of the deceptive practices observed across multiple Burger King locations, the practice of charging an inflated price on a Croissan'wich when a customer presents a BOGO coupon is a Burger King corporate policy. Despite the fact that Burger King franchises many of its locations, the uniformity by which various franchises across the country charge inflated prices for BOGO purchases reflects a top-down policy of the Burger King parent company to deceive customers.

38.    Accordingly, Burger King's nationwide scheme is stealing untold millions of dollars from hard working Americans.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of herself and all others similarly situated as members of the following classes:

**All persons who purchased a Croissan'wich at a Burger King location in Maryland using Burger King's BOGO coupon (the "Maryland Class").**

**All persons who purchased a Croissan'wich at a Burger King location in the District of Columbia using Burger King's BOGO coupon (the "District of Columbia Class").**

**All persons who purchased a Croissan'wich at a Burger King location in Virginia using Burger King's BOGO coupon (the "Virginia Class") (collectively, the "Classes").**

40.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Classes are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

41.     ***Numerosity.***  The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain many tens or hundreds of thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by the Defendant, however, and thus, class members may be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

42.     ***Existence and Predominance of Common Questions of Law and Fact.***  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)       Whether Burger King committed a deceptive or unfair trade practice in violation of the Maryland Consumer Protection Act, the Virginia Consumer Protection Act, and/or the District of Columbia's Consumer Protection and Procedures Act, by the acts and practices complained of herein;

(b)       Whether Burger King breached a contract with Plaintiff and the Classes by failing to comply with the terms of its BOGO coupons;

(c)       Whether Burger King breached the implied covenant of good faith and fair dealing by failing to comply with the terms of its BOGO coupons;

(d)       Whether Burger King has been unjustly enriched by failing to comply with the terms of its BOGO coupons and retaining excess payments to the detriment of Plaintiff and the Classes;

(e)       Whether Plaintiff and the Classes are entitled to damages, including statutory damages, and the proper measure of damages; and

(f)       Whether Plaintiff and the Classes are entitled to injunctive relief to stop the wrongdoing complained of herein.

43.       ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Classes in that Plaintiff used Burger King's BOGO coupon and was overcharged for a Croissan'wich, like all other members of the Classes.

44.       ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Classes.

45.     *Superiority.*  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is outweighed by the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.     In addition, the Classes may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

47.     Finally, the Classes may be certified for certain issues, pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, including:

(a)     Did Burger King commit a deceptive and unfair trade practice by charging Plaintiff and the Classes more for two Croissan'wiches using a BOGO coupon than one Croissan'wich?

(b)     Are Plaintiff and the Classes "consumers" entitled to protection under the consumer protection laws of Florida, Maryland, Virginia, and the District of Columbia?

(c)     Is the BOGO coupon offered by Burger King a contract?

(d)     Did Burger King breach the implied covenant of good faith and fair dealing by charging Plaintiff and the Classes more for two Croissan'wiches using a BOGO coupon than the price of one Croissan'wich?

48.     Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

49.     Damages may be calculated from the claims data maintained in Defendant's records, so that the cost of administering a recovery for the Classes can be minimized.  However, the precise amount of damages available to Plaintiff and the other members of the Classes are not a barrier to class certification.

## CAUSES OF ACTION

## COUNT I

**Violations of the Maryland Consumer Protection Act**
**(Md. Code Com. Law Section 13-101, *et seq.*)**
**On Behalf of the Maryland Class**

50.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

51.     Plaintiff brings this claim pursuant to the Maryland Consumer Protection Act, Md. Code Com. Law §13-101, *et seq.* ("MCPA").

52.     Burger King, Plaintiff, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law §13-101(h).

53.     The MCPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Code Com. Law §13-303.  Burger King participated in misleading, false, or deceptive acts that violated the MCPA.

54.     In the course of Burger King's business, Burger King intentionally concealed and suppressed material facts concerning the fact that the second Croissan'wich was not "free" with the BOGO coupon, but instead consumers paid more for two Croissan'wiches with the BOGO coupon than they would pay for one Croissan'wich.

55.     Plaintiff and Maryland Class members had limited means of discerning that Burger King's representations were false and misleading until after their purchase using the BOGO coupon, and only if they also purchased another single Croissan'wich contemporaneously and compared receipts.  Thus, acting reasonably, Plaintiff and Maryland Class members did not and could not unravel Burger King's deception without undergoing the unusual experience of purchasing a third Croissan'wich after using Burger King's BOGO coupon.

56.     Burger King's actions as set forth above occurred in the conduct of trade or commerce.

57.     In the course of Burger King's business, Burger King engaged in misleading, false, unfair or deceptive acts or practices that violated the MCPA by offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

58.     For example, the MCPA prohibits "(5) Advertisement or offer of consumer goods . . . (i) Without intent to sell, lease, or rent them as advertised or offered."  Md. Code Com. Law §13-301(5)(i).  Further, the MCPA prohibits "(6) False or misleading representation of fact which concerns: (i) The reason for or the existence or amount of a price reduction; or (ii) A price in comparison to a price of a competitor or to one's own price at a past or future time."  Md. Code Com. Law §13-301(6).

59.     The MCPA provides that "[t]his title shall be construed and applied liberally to promote its purpose. It is the intent of the General Assembly that in construing the term 'unfair or deceptive trade practices', due consideration and weight be given to the interpretations of § 5 (a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts."  Md. Code Com. Law §13-105.

60.     The FTC has proscribed the very conduct engaged in by Burger King, pursuant to the FTC Guide, and, thus, Burger King's conduct is a *per se* violation of the MCPA.

61.     Burger King intentionally and knowingly misrepresented material facts regarding the BOGO coupons with an intent to mislead Plaintiff and the Maryland Class.

62.     Burger King knew or should have known that its conduct violated the MCPA.

63.     Burger King's practice of offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich, was material to Plaintiff and the Maryland Class.

64.     Burger King's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true, undisclosed facts surrounding Burger King's BOGO offer.

65.     Plaintiff and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of Burger King's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the Maryland Class Members who purchased two Croissan'wiches using a BOGO coupon paid more than expressly provided for in the BOGO coupon than they otherwise would have paid had Burger King given a "free" Croissan'wich for the price of one Croissan'wich.

66.     Burger King had an ongoing duty to all Burger King customers to refrain from unfair and deceptive practices under the MCPA.

67.     Burger King's violations present a continuing risk of deception to Plaintiff as well as to the general public.  Burger King's unlawful acts and practices complained of herein affect the public interest.

68.     As a direct and proximate result of Burger King's violations of the MCPA, Plaintiff and the Maryland Class have suffered injury-in-fact and/or actual damage.

69.     Pursuant to Md. Code Com. Law §13-408, Plaintiff and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the MCPA.

## COUNT II

### Violation of the District of Columbia's Consumer Protection Procedures Act
### (D.C. Code Section 28-3901, *et seq.*)
### On Behalf of the District of Columbia Class

70.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

71.     Plaintiff brings this claim pursuant to the District of Columbia's Consumer Protection Procedures Act, D.C. Code §28-3901, *et seq.* ("District of Columbia CPPA").

72.     Burger King is a "person" under the District of Columbia CPPA, D.C. Code §28-3901(a)(1).

73.     District of Columbia Class Members are "consumers," as defined by D.C. Code §28-3901(1)(2), who purchased two Croissan'wiches using a BOGO coupon one or more times.

74.     Burger King's actions as set forth herein constitute "trade practices" under D.C. Code §28-3901.

75.     The District of Columbia CPPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  D.C. Code §28-3904.  Burger King participated in misleading, false, or deceptive acts that violated the District of Columbia CPPA.

76.     In the course of Burger King's business, Burger King intentionally concealed and suppressed material facts concerning the fact that the second Croissan'wich was not "free" with the BOGO coupon, but instead consumers paid more for two Croissan'wiches with the BOGO coupon than they would pay for one Croissan'wich.

77.     Plaintiff and District of Columbia Class members had no way of discerning that Burger King's representations were false and misleading until after their purchase using the BOGO coupon and only if they also purchased another single Croissan'wich contemporaneously and compared receipts.  Thus, acting reasonably, Plaintiff and District of Columbia Class members did not and could not unravel Burger King's deception on their own.

78.     Burger King's actions as set forth above occurred in the conduct of trade or commerce.

79.     In the course of Burger King's business, Burger King engaged in misleading, false, unfair or deceptive acts or practices that violated the District of Columbia CPPA by offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

80.     For example, the District of Columbia CPPA states that "[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to . . .  (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; . . . [or] (j) make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time."  D.C. Code §28-3904; §28-3904(h); §28-3904(j).

81.     The FTC has proscribed the very conduct engaged in by Burger King, pursuant to the FTC Guide.

82.     Burger King intentionally and knowingly misrepresented material facts regarding the BOGO coupons with an intent to mislead Plaintiff and the District of Columbia Class.

83.     Burger King knew or should have known that its conduct violated the District of Columbia CPPA.

84.     Burger King's practice of offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich was material to Plaintiff and the District of Columbia Class.

85.     Burger King's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true, undisclosed facts surrounding Burger King's BOGO offer.

86.     Plaintiff and the District of Columbia Class suffered ascertainable loss and actual damages as a direct and proximate result of Burger King's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the District of Columbia Class Members who purchased two Croissan'wiches using a BOGO coupon paid more than expressly provided for

in the BOGO coupon than they otherwise would have paid had Burger King given a "free" Croissan'wich for the price of one Croissan'wich.

87.     Burger King had an ongoing duty to all Burger King customers to refrain from unfair and deceptive practices under the District of Columbia CPPA.

88.     Burger King's violations present a continuing risk of deception to Plaintiff as well as to the general public.  Burger King's unlawful acts and practices complained of herein affect the public interest.

89.     As a direct and proximate result of Burger King's violations of the District of Columbia CPPA, Plaintiff and the District of Columbia Class have suffered injury-in-fact and/or actual damage.

90.     Plaintiff and the District of Columbia Class are entitled to recover treble damages or $1,500, whichever is greater, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. Code §28-3901.

## COUNT III

### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. Section 59.1-196, *et seq.*)
### On Behalf of the Virginia Class

91.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

92.     Plaintiff brings this action on behalf of herself and the Virginia Class against Burger King.

93.     Burger King, Plaintiff, and the Virginia Class are "persons" within the meaning of Va. Code §59.1-198.

94.     Burger King is a "supplier" within the meaning of Va. Code §59.1-198.

95.     The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices."  Va. Code §59.1-200(A).

96.     In the course of Burger King's business, Burger King intentionally concealed and suppressed material facts concerning the fact that the second Croissan'wich was not "free" with the BOGO coupon, but instead consumers paid more for two Croissan'wiches with the BOGO coupon than they would pay for one Croissan'wich.

97.     Plaintiff and Class members had no way of discerning that Burger King's representations were false and misleading until after their purchase using the BOGO coupon and only if they also purchased another single Croissan'wich contemporaneously and compared receipts. Thus, acting reasonably, Plaintiff and Class members did not and could not unravel Burger King's deception on their own.

98.     Burger King thus violated the Virginia CPA, at a minimum by advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised; making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.  Va. Code §59.1-200(A).

99.     Burger King knew it was charging a surreptitious premium to customers who used a BOGO coupon to purchase two Croissan'wiches.

100.     Burger King intentionally and knowingly misrepresented material facts regarding the BOGO coupon for Croissan'wiches with intent to mislead Plaintiff and the Virginia Class.

101.     Burger King knew or should have known that its conduct violated the Virginia CPA, as the FTC has proscribed the very conduct engaged in by Burger King, pursuant to the FTC Guide.

102.     Burger King owed Plaintiff and Virginia Class members a duty to disclose, truthfully, all the facts concerning the price of Croissan'wiches when customers used a BOGO coupon because Burger King:

(a)      possessed exclusive knowledge that they were surreptitiously inflating prices for customers who purchase two Croissan'wiches with a BOGO coupon, as compared to purchases of a single Croissan'wich;

(b)      intentionally concealed the foregoing from Plaintiff and Virginia Class members; and/or

(c)      made incomplete representations about the BOGO promotion for Croissan'wiches, while purposefully withholding material facts from Plaintiff that contradicted these representations.

103.      Burger King concealed the fact that, when customers would use a BOGO coupon, they do not buy a Croissan'wich at regular price and receive a second Croissan'wich for free, as the coupon directly states.  Instead, Burger King charged a significant premium over the regular price for a Croissan'wich when customers used a BOGO coupon.

104.      The true price and nature of the BOGO coupon was material to Plaintiff and the Virginia Class.  The true price of an item, as well as the promotional value of a coupon, are critical to the decision to purchase a product – fast food included.

105.      Burger King's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Virginia Class members, about the nature of and price associated with its BOGO Croissan'wich offer, concealing the fact that Plaintiff and Virginia Class members would be instead paying inflated prices to receive a "free" item.

106.      Plaintiff and Virginia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Burger King's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the Virginia Class members who purchased

Croissan'wich sandwiches using a BOGO coupon would not have purchased at all and/or – if the BOGO coupon's true nature had been disclosed – would have paid significantly less for them.

107.     Burger King had an ongoing duty to all Burger King customers to refrain from unfair and deceptive practices under the Virginia CPA in the course of its business.

108.     Burger King's violations present a continuing risk to Plaintiff as well as to the general public.  Burger King's unlawful acts and practices complained of herein affect the public interest.

109.     Pursuant to Va. Code §59.1-204(A)-(B), Plaintiff and the Virginia Class are entitled to the greater of actual damages or $500 for each Virginia Class member, attorneys' fees, and costs. Because Burger King's actions were willful, Plaintiff and the Virginia Class should each receive the greater of treble damages or $1,000.  *Id.*

## COUNT IV

### Breach of Express Contract
### On Behalf of the Maryland Class

110.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

111.     Burger King offered Plaintiff and the Maryland Class the opportunity to pay for one Croissan'wich and get one Croissan'wich for free, using its BOGO coupon.  That is, Burger King's BOGO coupon promised to provide Plaintiff and the Maryland Class two Croissan'wiches for the price of one Croissan'wich.

112.     Burger King was obligated pursuant to the terms of the BOGO coupon to charge Plaintiff and the Maryland Class the price of one Croissan'wich.

113.     The BOGO coupon constitutes a contract for the sale of goods.

114.     Plaintiff and members of the Maryland Class fully performed their obligations under the BOGO contract by tendering money for the purchase.

115.     Burger King breached the BOGO contract by offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

116.     Plaintiff and members of the Maryland Class suffered damages and losses as described herein.

117.     The damages and losses sustained by Plaintiff and members of the Maryland Class are the direct and proximate result of Burger King's breaches of the BOGO contract.

## COUNT V

### Breach of Express Contract
### On Behalf of the District of Columbia Class

118.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

119.     Burger King offered Plaintiff and the District of Columbia Class the opportunity to pay for one Croissan'wich and get one Croissan'wich for free, using its BOGO coupon.  That is, Burger King's BOGO coupon promised to provide Plaintiff and the District of Columbia Class two Croissan'wiches for the price of one Croissan'wich.

120.     Burger King was obligated pursuant to the terms of the BOGO coupon to charge Plaintiff and the District of Columbia Class the price of one Croissan'wich.

121.     The BOGO coupon constitutes a contract for the sale of goods.

122.     Plaintiff and members of the District of Columbia Class fully performed their obligations under the BOGO contract by tendering money for the purchase.

123.     Burger King breached the BOGO contract by offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

124.     Plaintiff and members of the District of Columbia Class suffered damages and losses as described herein.

125.     The damages and losses sustained by Plaintiff and members of the District of Columbia Class are the direct and proximate result of Burger King's breaches of the BOGO contract.

## COUNT VI

### Breach of Express Contract
### On Behalf of the Virginia Class

126.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

127.     Burger King offered Plaintiff and the Virginia Class the opportunity to pay for one Croissan'wich and get one Croissan'wich for free, using its BOGO coupon.  That is, Burger King's BOGO coupon promised to provide Plaintiff and the Virginia Class two Croissan'wiches for the price of one Croissan'wich.

128.     Burger King was obligated pursuant to the terms of the BOGO coupon to charge Plaintiff and the Virginia Class the price of one Croissan'wich.

129.     The BOGO coupon constitutes a contract for the sale of goods.

130.     Plaintiff and members of the Virginia Class fully performed their obligations under the BOGO contract by tendering money for the purchase.

131.     Burger King breached the BOGO contract by offering to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

132.     Plaintiff and members of the Virginia Class suffered damages and losses as described herein.

133.     The damages and losses sustained by Plaintiff and members of the Virginia Class are the direct and proximate result of Burger King's breaches of the BOGO contract.

## COUNT VII

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### On Behalf of the Maryland Class

134.    Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

135.    There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

136.    Under the express and implied terms of the BOGO contracts entered into between Burger King, on one hand, and Plaintiff and the Maryland Class members on the other hand, Plaintiff and the Maryland Class members were to benefit through the use of Burger King's BOGO coupons, while Burger King was supposed to benefit through consumers' payment for goods.

137.    Burger King exhibited bad faith through its conscious scheme to offer to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

138.    Burger King breached the implied covenant of good faith and fair dealing with respect to the specific contractual terms in the BOGO coupon.

139.    Plaintiff and members of the Maryland Class suffered damages and losses as described herein.

140.    The damages and losses sustained by Plaintiff and members of the Maryland Class are the direct and proximate result of Burger King's breaches of the covenant of good faith and fair dealing implied in the BOGO contracts.

## COUNT VIII

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### On Behalf of the District of Columbia Class

141.    Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

142.     There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

143.     Under the express and implied terms of the BOGO contracts entered into between Burger King, on one hand, and Plaintiff and the District of Columbia Class members on the other hand, Plaintiff and the District of Columbia Class members were to benefit through the use of Burger King's BOGO coupons, while Burger King was supposed to benefit through consumers' payment for goods.

144.     Burger King exhibited bad faith through its conscious scheme to offer to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

145.     Burger King breached the implied covenant of good faith and fair dealing with respect to the specific contractual terms in the BOGO coupon.

146.     Plaintiff and members of the District of Columbia Class suffered damages and losses as described herein.

147.     The damages and losses sustained by Plaintiff and members of the District of Columbia Class are the direct and proximate result of Burger King's breaches of the covenant of good faith and fair dealing implied in the BOGO contracts.

**COUNT IX**

**Breach of the Implied Covenant of Good Faith and Fair Dealing
On Behalf of the Virginia Class**

148.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

149.     There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

150.     Under the express and implied terms of the BOGO contracts entered into between Burger King, on one hand, and Plaintiff and the Virginia Class members on the other hand, Plaintiff and the Virginia Class members were to benefit through the use of Burger King's BOGO coupons, while Burger King was supposed to benefit through consumers' payment for goods.

151.     Burger King exhibited bad faith through its conscious scheme to offer to sell two Croissan'wiches for the price of one with a BOGO coupon, but charging more than Burger King charged for a single Croissan'wich.

152.     Burger King breached the implied covenant of good faith and fair dealing with respect to the specific contractual terms in the BOGO coupon.

153.     Plaintiff and members of the Virginia Class suffered damages and losses as described herein.

154.     The damages and losses sustained by Plaintiff and members of the Virginia Class are the direct and proximate result of Burger King's breaches of the covenant of good faith and fair dealing implied in the BOGO contracts.

## COUNT X

### Unjust Enrichment
### On Behalf of the Classes

155.     Plaintiff hereby incorporates by reference ¶¶1-49 as though fully set forth herein.

156.     Burger King has been, and continues to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the members of the Classes, as a result of its conduct directed against

Plaintiff and the Classes as a whole, including the collection of money from the surreptitiously inflated sale price of Croissan'wiches purchased using a BOGO coupon.

157.    Burger King has been unjustly benefitted through the unlawful or wrongful collection of money from the sale of the BOGO Croissan'wiches, and continues to do so benefit to the detriment and at the expense of Plaintiff and members of the Classes.

158.    Accordingly, Burger King should not be allowed to retain the proceeds from the benefits conferred up on it by Plaintiff and the members of the Classes, who seek disgorgement of Burger King's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiff and the Classes, in an equitable and efficient fashion as the Court deems just and proper.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.    For an order certifying the Classes under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Classes;

B.    Awarding actual and consequential damages;

C.    Awarding statutory damages per violation under the District of Columbia CPPA;

D.    Awarding statutory damages per violation under the Virginia Consumer Protection Act;

E.    Granting injunctive and declaratory relief;

F.    For pre- and post-judgment interest to the Classes, as allowed by law;

G.    For reasonable attorneys' fees and costs to counsel for the Classes; and

H.    Granting such other and further relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial on all issues so triable.

DATED:  May 2, 2017

SILVERMAN THOMPSON SLUTKIN &
   WHITE LLC
STEVEN D. SILVERMAN (Bar No. 22887)
ssilverman@mdattorney.com
WILLIAM N. SINCLAIR (Bar No. 28833)
bsinclair@mdattorney.com


                                  /s/
                      William N. Sinclair

201 N. Charles St., Suite 2600
Baltimore, MD 21201
Telephone:  410/385-2225
410/547-2432 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
(*Pro Hac Vice* Pending)
sdavidson@rgrdlaw.com
CHRISTOPHER C. GOLD
(*Pro Hac Vice* Pending)
cgold@rgrdlaw.com
ALEXANDER D. KRUZYK
(*Pro Hac Vice* Pending)
akruzyk@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
ROXANA PIERCE
(*Pro Hac Vice* Pending)
rpierce@rgrdlaw.com
1701 K Street NW, Suite 350
Washington, DC  20036
Telephone: 202/822-6762
202/828-8528 (fax)

*Attorneys for Plaintiff and the Classes*