UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KOLETA ANDERSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 17-CV-01204 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BURGER KING CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |
| ———————————————————— | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ............................................................................................2

II.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................4

        A.      The Proposed Settlement Is Within the Range of Possible Final Approval ...........5

                1.      The Proposed Settlement Is Fair .................................................5

                2.      The Proposed Settlement Is Adequate .......................................7

                3.      This Settlement Possesses None of the Hallmarks of the Settlement
                        Rejected by the Seventh Circuit in *Subway* .................................................8

III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ...........................10

        A.      Standards Applicable to Class Certification ...........................................10

        B.      Plaintiff Satisfies the Requirements of Rule 23(a) ................................................12

                1.      The Members of the Proposed Class Are so Numerous that Joinder
                        of All Members Is Impracticable ................................................12

                2.      Questions of Law and Fact Are Common to the Proposed Class..............13

                3.      Plaintiff's Claims Are Typical of Those of the Proposed Class ................14

                4.      Plaintiff Will Fairly and Adequately Protect the Interests of the
                        Class ...............................................................................................15

        C.      The Requirements of Rule 23(b) Are Satisfied....................................................16

IV.     PLAINTIFF'S COUNSEL'S ANTICIPATED FEE AND EXPENSE AWARD
        REQUEST IS REASONABLE...........................................................................19

V.      CONCLUSION................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ........................................................................................12

*Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .....................................................................17

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis*
    *Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016) .............................19

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ..........................................................................14

*Bullock v. Bd. of Educ.*,
    210 F.R.D. 556 (D. Md. 2002) ........................................................................12

*Bulmash v. Travelers Indem. Co.*,
    257 F.R.D. 84 (D. Md. 2009) ..........................................................................10

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ....................................................................11

*Clark v. Experian Info. Sols., Inc.*,
    Nos. 8:00-1217-24, 8:00-1218-24, 8:00-1219-24, 2002 U.S. Dist. LEXIS
    20410 (D.S.C. June 26, 2002) .........................................................................13

*Covarrubias v. Capt. Charlie's Seafood, Inc.*,
    No. 2:10-CV-10-F, 2011 WL 2690531 (E.D.N.C. July 6, 2011) ...................10

*Emcor Grp., Inc. v. Great Am. Ins. Co.*,
    No. CIV.A. ELH-12-0142, 2013 WL 1315029 (D. Md. Mar. 27, 2013) .................2

*Fiberglass Insulators, Inc. v. Dupuy*,
    856 F.2d 652 (4th Cir. 1988) ............................................................................2

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ..........................................................................12

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) ...........................................................................14

*Grice v. PNC Mortg. Corp. of Am.*,
    No. CIV.A.PJM-97-3084, 1998 WL 350581 (D. Md. May 21, 1998) ......................5

1317268_1

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..............................................................................10

*Holsey v. Armour & Co.*,
    743 F.2d 199 (4th Cir. 1984) ..............................................................................12

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994).....................................................................4, 5

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) .....................................................................11, 15

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) .............................................................................5, 7

*In re Kirschner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991)...............................................................................14

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) .....................................................................6

*In re Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) .....................................................................13, 15

*In re Montgomery Cnty. Real Estate Antitrust Litig.*,
    83 F.R.D. 305 (D. Md. 1979)..................................................................................5

*In re Red Hat, Inc. Sec. Litig.*,
    No. 5:04-CV-473-BR (3), 2010 WL 2710517 (E.D.N.C. June 11, 2010)............5, 6

*In Re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
    869 F.3d 551 (7th Cir. 2017) .........................................................................8, 9, 10

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................................................6

*Krakauer v. Dish Network L.L.C.*,
    311 F.R.D. 384 (M.D.N.C. 2015) ..........................................................................13

*Leszczynski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997)......................................................................11, 17

*Minter v. Wells Fargo Bank, N.A.*,
    274 F.R.D. 525 (D. Md. 2011)...............................................................................12

- iii -

*Minter v. Wells Fargo Bank, N.A.*,
  No. WMN-07-3442, 2011 U.S. Dist. LEXIS 47588 (D. Md. May 3, 2011) ..........................13

*Morris v. Wachovia Sec., Inc.*,
  223 F.R.D. 284 (E.D. Va. 2004) ........................................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................................................8

*Peoples v. Wendover Funding, Inc.*,
  179 F.R.D. 492 (D. Md. 1998)...........................................................................................12

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ......................................................................................11

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ...................................................................................14, 15

*Simpson v. Specialty Retail Concepts*,
  149 F.R.D. 94 (M.D.N.C. 1993) ........................................................................................12

*Stoffels v. SBC Commcn's, Inc.*,
  238 F.R.D. 446 (W.D. Tex. 2006) .....................................................................................16

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
  890 F. Supp. 499 (E.D. Va. 1995) .......................................................................................6

*Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-cv-00271-JFA, 2012 WL 2370523 (D.S.C. June 22, 2012) ....................................10

*Temporary Servs., Inc. v. Am. Int'l Grp.*,
  No. 3:08-cv-00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) .....................................5

*Thomas v. La.-Pac. Corp.*,
  246 F.R.D. 505 (D.S.C. 2007) ...........................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................................................13

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ...........................................................................................16

*Wetzel v. Liberty Mut. Ins. Co.*,
  508 F.2d 239 (3d Cir. 1975)...............................................................................................17

- iv -

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure

  Rule 23 .................................................................................................10, 11, 12, 18

  Rule 23(a)................................................................................................10, 12, 16

  Rule 23(a)(1)........................................................................................................12

  Rule 23(a)(2)........................................................................................................13

  Rule 23(a)(4)................................................................................................15, 16

  Rule 23(b) ...................................................................................................10, 16

  Rule 23(b)(2)................................................................................................. *passim*

  Rule 23(b)(3).....................................................................................3, 6, 14, 18

  Rule 23(e)...................................................................................................... 1, 4

  Rule 23(e)(2).........................................................................................................5

**SECONDARY AUTHORITIES**

7AA Charles A. Wright, Arthur R. MIller & Mary K. Kane, *Federal Practice and*
  *Procedure: Federal Rules of Civil Procedure* §1775 (3d ed. 2017).......................................17

David F. Herr, *Manual on Complex Litigation*, Annotated, §21.24 (2017) ..................................17

Plaintiff Koleta Anderson ("Plaintiff"), individually and on behalf of all others similarly situated, hereby moves the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order: (1) preliminarily approving the proposed settlement in this action (the "Settlement"), as memorialized in the Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement") appended as Exhibit 1 to the Declaration of Stuart A. Davidson in Support of Preliminary Approval of Class Action Settlement ("Davidson Decl."), filed contemporaneously herewith; and (2) scheduling a hearing to determine whether the Settlement should be given final approval (the "Settlement Hearing") and establish a deadline for the filing of objections to the proposed Settlement.

The following is a proposed timetable to assist the Court in establishing the necessary deadlines in the Order Preliminarily Approving Settlement ("Preliminary Order" or "Prelim. Ord."):

| **Event** | **Proposed Deadline** |
|---|---|
| Filing Motion for Final Approval and for an Award of Attorneys' Fees, Expenses, and Service Award | 45 days prior to the Settlement Hearing |
| Filing Objections | 21 days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after Entry of Preliminary Order |

- 1 -

**MEMORANDUM OF LAW**

## I.     INTRODUCTION

The Settlement presented to the Court for preliminary approval ends a consumer class action

in the manner and form as it should – an early negotiated resolution that benefits everyone involved.

*See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) (noting the "public

policy of favoring and encouraging settlement"); *Emcor Grp., Inc. v. Great Am. Ins. Co.*, No. CIV.A.

ELH-12-0142, 2013 WL 1315029, at *25 (D. Md. Mar. 27, 2013) (same).

Within days of the filing of Plaintiff's Class Action Complaint, Dkt. No. 1 ("Complaint"),

which alleged that defendant Burger King Corporation ("BKC" or "Defendant") charged consumers

more for two CROISSAN'WICH® ("Croissan'wich") items using a buy-one, get-one free ("BOGO")

coupon than the cost of a single Croissan'wich, BKC commenced an internal investigation of

Plaintiff's allegations.  BKC's investigation concluded that in certain instances where a consumer

used a BOGO to order two Croissan'wiches without egg, cheese, and/or a meat (a "modified

Croissan'wich"), they may have been charged the price of a single regularly-priced Croissan'wich,

rather than the lower price that restaurant may have charged for a single modified Croissan'wich.

BKC's investigation further concluded that less than 10% of all Croissan'wich purchases

using a BOGO were affected by this practice, which took place between October 1, 2015 and

May 19, 2017 (the "Class Period") (the other 90% either ordered two regular Croissan'wiches, the

restaurant they visited did not lower its price for modified Croissan'wiches, or otherwise were

correctly charged for two modified Croissan'wiches).  BKC promptly sent a software update to its

franchisees who use the particular point-of-sale system at issue, as well as written instructions to

restaurant cashiers, to ensure that the problem ceased.

- 2 -

Thereafter, BKC's counsel reached out to Plaintiff's counsel to begin a dialogue as to whether, in light of, *inter alia*, BKC's investigation and subsequent remedial actions, Plaintiff would be interested in settling the action on a class-wide basis for injunctive relief, whereby BKC would: (a) agree to an appropriate permanent injunction;[1] and (b) offer refunds to BKC customers who either provide receipts demonstrating that they were impacted by the practice (for which BKC would pay $5.00 cash for each occurrence) or affirm that they were so. Importantly, BKC immediately agreed that, if an injunctive relief settlement was reached, and even though BKC would be providing Class[2] members with refunds if requested, there would be ***no damages claims released***.

Over the course of several months, the parties engaged in an informal sharing of fulsome information regarding BKC's investigation, the size of the Class, the total likely damages available if Plaintiff's obtained class certification and prevailed at trial, and BKC's belief that certifying a class under Rule 23(b)(3) would be challenging for Plaintiff in light of, *inter alia*, Class members likely being unable to identify themselves as having been harmed without receipts and without BKC's possession of data showing the same.

On August 18, 2017, the parties executed a Memorandum of Understanding ("MOU") to resolve the case on the terms ultimately agreed to in the Settlement Agreement. Prior to executing

---

[1]   The permanent injunction will provide: "BKC and its employees, with actual or constructive knowledge of the Court's final judgment, shall be and hereby are permanently enjoined and restrained from operating a BKC-approved Point of Sale system that charges consumers more money for two Croissan'wiches when redeeming a BOGO Croissan'wich coupon than the higher-priced of the two Croissan'wiches had the consumer ordered that single Croissan'wich by itself." *See* Davidson Decl., Ex. 1, ¶3.2.

[2]   The "Class" is defined as "all persons in the United States who . . . purchased two or more Croissan'wich[es] . . . from a BKC restaurant, redeemed a [BOGO] coupon in connection with the purchase, yet paid more than the amount that restaurant was charging at the time for the higher-priced Croissan'wich the person ordered." *Id.* ¶1.2.

1317268_1

the Settlement Agreement, Plaintiff requested and received additional documents and information

from BKC regarding the allegations in the Complaint and BKC's investigation, and took the

deposition of Eric Maust, BKC's Global Lead, RBI Digital Programs, on September 21, 2017.

Among other things, Mr. Maust testified on behalf of BKC that the amount of the overcharge varied

by restaurant based on the price each franchisee set for different modified Croissan'wiches; that the

median overcharge was roughly 25 cents; and that BKC had no way to determine from its records

the identity of any customer who had been overcharged, even if an affected customer paid by credit

card.  The additional discovery from BKC confirmed Plaintiff's and her counsel's view that the

proposed Settlement is extremely fair, clearly adequate, and more than reasonable to resolve this

case in the manner provided for in the Settlement Agreement.  As mentioned above, any claims for

damages Class members may have against BKC will ***not*** be released in this proposed Settlement.

Instead, the Settlement provides a critically important permanent injunction against future deceptive

practices and a program to offer restitution (even without a release of damages claims), which is an

exceptional result in a case like this.

For the reasons that follow, Plaintiff respectfully requests that the Court enter the Preliminary

Order.  BKC does not oppose this motion.

## II.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of the settlement

reached in any certified class action.  Fed. R. Civ. P. 23(e).

In reviewing the merits of a proposed class action settlement, courts generally employ a two-

step approach.  *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827

(E.D.N.C. 1994).  ***First***, the court engages in a preliminary approval analysis "to determine whether

the proposed settlement is within the range of possible approval or, in other words, whether there is

1317268_1

probable cause to notify the class of the proposed settlement." *Id.*[3] ***Second***, after preliminary approval is granted and the class is notified, the court holds a "fairness hearing," where all interested parties may be heard on the proposed settlement. *Id.*  If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id.*; Fed. R. Civ. P. 23(e)(2).  The parties are now requesting the Court to take the first step in this process and grant preliminary approval of the Settlement.

### A.      The Proposed Settlement Is Within the Range of Possible Final Approval

The Fourth Circuit applies a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules by considering: (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's-length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR (3), 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010).

### 1.      The Proposed Settlement Is Fair

In determining whether a proposed settlement is fair to the parties, courts consider: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities." *Jiffy Lube*, 927 F.2d at 158-59; *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979).

"District courts within [this] Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be

---

[3]   Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

deemed fair." *Temporary Servs., Inc. v. Am. Int'l Grp.*, No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *11 (D.S.C. Sept. 14, 2012) (citing *Grice v. PNC Mortg. Corp. of Am.*, No. CIV.A.PJM-97-3084, 1998 WL 350581, at *6 (D. Md. May 21, 1998)) (preliminarily approving a settlement reached "very early" in the litigation, only months after the filing of the class action complaint, since it contained favorable results for both parties and reflected mutual concessions); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (class action settlement fair where parties reached settlement agreement six months after complaint was filed and plaintiffs conducted "sufficient informal discovery and investigation to fairly evaluate the merits of [the d]efendants' positions during settlement negotiations").

The Settlement here was reached after both Plaintiff and BKC concluded that, with the benefit of both informal and confirmatory discovery, a negotiated resolution of the action to ensure that the conduct alleged in the Complaint does not occur again was in the best interests of all concerned. The Settlement was only reached after high-level, complex settlement negotiations by highly experienced counsel took place, which weighs in favor of preliminary approval.

Moreover, the parties have acted independently and negotiated at arm's-length to reach the proposed Settlement. Critically, the parties agreed early on in their negotiations that, while an injunctive relief settlement made complete sense in light of, *inter alia*, the small amount of money at issue per class member and the potential difficulties in certifying a Rule 23(b)(3) damages class, no injunctive relief settlement could, under any circumstances, release damages claims.

Finally, regarding counsel's experience in consumer protection law, Robbins Geller's firm resume speaks for itself. *See* Davidson Decl., Ex. 2. Robbins Geller has been one of the nation's leading law firms in class action practice generally, and consumer protection law specifically, for many years. Plaintiff's counsel believe that the proposed Settlement is a highly favorable result and

- 6 -

in the best interests of the Class.  *Red Hat*, 2010 WL 2710517, at *3 (citing *Isby v. Bayh*, 75 F.3d

1191, 1200 (7th Cir. 1996)) (a court is "entitled to give consideration to the opinion of competent

counsel that the settlement [is] fair, reasonable, and adequate"); *see also In re MicroStrategy, Inc.*

*Sec. Litig.*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001) (when it appears that a settlement results from

extensive arm's-length negotiations that were conducted in good faith, "it is 'appropriate . . . to give

significant weight to the judgment of class counsel that the proposed settlement is in the interest of

their clients and the class as a whole.'").  For the foregoing reasons, the proposed Settlement is fair,

and warrants this Court's preliminary approval.

<strong>2. The Proposed Settlement Is Adequate</strong>

In determining adequacy, courts consider: "(1) the relative strength of the plaintiffs' case on

the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to

encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation,

(4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the

degree of opposition to the settlement."  *Jiffy Lube*, 927 F.2d at 159.[4]

While Plaintiff believes her claims regarding BKC's Croissan'wich BOGO program are

strong on the merits, and the outcome of any litigation is far from certain and come along with

significant risks as in any lawsuit, Plaintiff has achieved through the Settlement the ***very relief*** she

seeks in this case – an injunction prohibiting the alleged wrongful conduct from occurring anymore

and refunds to Class members if they want them.  *See* Complaint, Prayer for Relief, ¶¶B-E.  While

the Settlement admittedly does not provide a common fund of money from which Class members

---

[4]   Class members will be given an opportunity to object to any aspect of the Settlement.  Prior to
the final Settlement Hearing, Plaintiff will report the Class' reaction to the Court as part of her
motion for final approval of the Settlement.

may claim a damages recovery, it not only provides refunds that likely *exceed* that which Class

members are entitled under the law, but Class members *may still seek* damages from BKC on an

individual basis after the Settlement because those claims are not being released.    Thus, the

Settlement not only achieves the certainty of an injunction and a refund opportunity, which may

never have materialized but for the Settlement, it completely achieves the outcome Plaintiff desired

when she initiated the litigation.

To be sure, if the case were to continue, further litigation would include class certification

discovery, complex fact and expert discovery, and extensive summary judgment briefing.  The

eventual trial would entail significant costs, delay and uncertainty for all involved, with success for

Class members far from assured.  Even if successful at trial, the Class faced the likelihood of post-

trial motions and appeals, with concomitant costs and delay in recovery.

Moreover, an evaluation of the benefits of settlement must be tempered by a recognition that

any compromise involves concessions on the part of all of the settling parties.  Indeed, "the very

essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest

hopes.'"  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  That said,

Plaintiff does not believe she had to compromise much at all in achieving for herself and the Class

virtually everything she asked for in the Complaint.

### 3.    This Settlement Possesses None of the Hallmarks of the Settlement Rejected by the Seventh Circuit in *Subway*

The Seventh Circuit's recent decision in *In Re Subway Footlong Sandwich Mktg. & Sales

Practices Litig.*, 869 F.3d 551 (7th Cir. 2017)—which considered and rejected a Rule 23(b)(2)

settlement against another quick-service restaurant company—demonstrates why the instant

Settlement, which is distinguishable from the proposed *Subway* settlement in every material respect,

merits approval.

- 8 -

The issue in *Subway* was that the restaurant's "Footlong" sandwiches, which those plaintiffs challenged as being sometimes a bit less than "a foot long," was deceptive.  The Seventh Circuit found that the plaintiffs' consumer fraud claims had no merit for several reasons, including that quarter-inch variations in the size of sandwich rolls "are wholly attributable to the natural variability in the baking process and cannot be prevented," and that customers suffered no cognizable monetary injury because "Subway sandwiches are made to order in front of the customer."  *Subway*, 869 F.3d at 553.  "[A]ll of Subway's  raw dough sticks weight exactly the same, so the rare sandwich roll that fails to bake to a full 12 inches actually contains no less bread than any other."  *Id.* at 554.  "Rather than drop the suits as meritless," *id.*, the *Subway* plaintiffs pressed for an injunctive settlement that would have paid class counsel $520,000 but bound Subway to ***no more than it had already been doing pre-suit***, and therefore was "utterly worthless."  *Id.* at 557.

Both the claims and the proposed Settlement here are entirely distinguishable.

***First***, it is undisputed here that some Burger King customers did not receive the full monetary benefits of their BOGO coupons, although the percentage was small and the monetary harm typically was only a few cents.  That was not the case in *Subway*.

***Second***, it is undisputed that Plaintiff's lawsuit gave BKC its first notice of what BKC acknowledged to be a problem.  BKC then, in direct response to Plaintiff's lawsuit, immediately adopted effective corrective measures and has undertaken in this Settlement to ensure that the problem with its POS system does not recur.  That is far different from *Subway*, where the proposed Settlement corrected nothing.

***Third***, unlike *Subway*, this Settlement provides monetary benefits—a $5.00 cash payment for those with receipts and a $2.00 gift card for those lacking receipts—for those who believe they were

- 9 -

overcharged by a few cents when using a BOGO coupon.  Through those payments and by virtue of BKC's corrective measures, the Class will benefit meaningfully, as the *Subway* class did not.

**Fourth**, both the fee award Plaintiff's counsel may seek here (a maximum of $185,000 here vs. $520,000 in *Subway*), and the proposed incentive award for Plaintiff ($500 here vs. $1,000 to multiple plaintiffs in *Subway*) are substantially smaller than in *Subway*.  The proposed fee award here is undisputedly based on a lodestar calculation and is warranted by the successful results achieved for the Class.

This Settlement is far from *Subway* and the Court should approve it.

## III.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement."  *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011).  "It is recognized that a potential settlement is a relevant consideration when considering class certification[;] . . . certainly settlement should be . . . an important factor, to be considered when determining certification."  *Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *1 (D.S.C. June 22, 2012).  "[F]or settlement purposes, in order to certify a class, the Plaintiffs must demonstrate that the proposed certification satisfies the prerequisites set forth within Rule 23(a) and Rule 23(b)."  *Id.*

### A.   Standards Applicable to Class Certification

Class actions serve important public purposes, including judicial economy, efficiency, and providing "'aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions.'"  *Bulmash v. Travelers Indem. Co.*,

257 F.R.D. 84, 87 (D. Md. 2009) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)).

An action may be certified as a class action pursuant to Rule 23 if each of the four prerequisites of Rule 23(a) is met, and if the action qualifies under one of Rule 23(b)'s subdivisions. Rule 23(a) requires:

(1)     *Numerosity*: the class is so numerous that joinder of all members is impracticable;

(2)     *Commonality*: there are questions of law or fact common to the class;

(3)     *Typicality*: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     *Adequacy*: the representative parties will fairly and adequately protect the interests of the class.

Plaintiff seeks class certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).  "Generally applicable" (in the context of Rule 23(b)(2)) means that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity . . . [directed] to all members." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997).

The class action device may also be appropriate in consumer protection actions seeking injunctive relief.  *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) ("This case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are

- 11 -

unlawful, and (2) injunctive relief prohibiting defendants from continuing them.  Those requests can

be satisfied with 'indivisible' equitable relief that benefits all class members at once, as the Rule

suggests."); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)

Courts have construed Rule 23 liberally and have noted that, when in doubt, courts should err

in favor of certification.  *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va.

2006); *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004) ("[t]he policy in the

Fourth Circuit is to 'give Rule 23 a liberal rather than a restrictive construction'"); *Simpson v.

Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) (same).

In determining whether a class should be certified, the Court need only make factual and

legal determinations on the merits to the extent they overlap with findings necessary for its Rule 23

analysis.  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).  Courts should

otherwise avoid delving into an evaluation of the merits at the class certification stage.  *Minter v.

Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 532-33 (D. Md. 2011); *Amgen Inc. v. Conn. Ret. Plans &

Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent – but only

to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied.").

**B.      Plaintiff Satisfies the Requirements of Rule 23(a)**

**1.      The Members of the Proposed Class Are so Numerous that
Joinder of All Members Is Impracticable**

Rule 23 permits class certification if "the class is so numerous that joinder of all members is

impracticable."   Fed. R. Civ. P. 23(a)(1).   "Impracticability refers only to difficulty, not

impossibility."  *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998).  While

there is no precise number of class members necessary to meet this threshold, a proposed class of at

least forty members is generally sufficient to establish this requirement. *Thomas v. La.-Pac. Corp.*,

246 F.R.D. 505, 509 (D.S.C. 2007).  A plaintiff need not establish the exact size of the proposed

class when the court can infer that the class will be large enough to satisfy the numerosity

requirement.  *See id.*; *see also Bullock v. Bd. of Educ.*, 210 F.R.D. 556, 558 (D. Md. 2002) (in

determining numerosity, "the court looks at the 'nature of the claim . . . asserted by the plaintiffs and

the number of persons who could have been injured by [the alleged wrongs]'") (quoting *Holsey v.

Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984)).

Here, informal and formal discovery has uncovered that approximately 5.25 million

Croissan'wich BOGO coupons were redeemed nationwide during the Class Period.  Even though

only about 10 percent of those redemptions involved overcharges, the numerosity element is clearly

met.

### 2.      Questions of Law and Fact Are Common to the Proposed Class

As Rule 23(a)(2) requires, the claims of the proposed Class members involve numerous

common questions of law and fact.  To establish commonality, class members must have "suffered

the same injury," and "[t]heir claims must depend upon a common contention."  *Wal-Mart Stores,

Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Class members' "common contention . . . must be of such a

nature that it is capable of classwide resolution – which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

The commonality requirement "does not mean that members of the class must have 'identical factual

and legal claims in all respects.'"  *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009).

Here, questions of fact and law common to all proposed Class members include, *inter alia,*

whether BKC committed a deceptive or unfair trade practice in violation of the Maryland Consumer

Protection Act, the Virginia Consumer Protection Act, and/or the District of Columbia's Consumer

Protection and Procedures Act, and whether Plaintiff and the Class are entitled to injunctive relief available under those consumer protection statutes.

Courts in this Circuit have routinely found that common questions of law or fact exist in consumer class actions. *See, e.g.*, *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2011 U.S. Dist. LEXIS 47588, at *81 (D. Md. May 3, 2011); *Clark v. Experian Info. Sols., Inc.*, Nos. 8:00-1217-24, 8:00-1218-24, 8:00-1219-24, 2002 U.S. Dist. LEXIS 20410, at *12-13 (D.S.C. June 26, 2002). As explained below, the "predominance" of common questions, which would be at issue in a class certified pursuant to Rule 23(b)(3), is not required when a class is certified pursuant to Rule 23(b)(2).

### 3.      Plaintiff's Claims Are Typical of Those of the Proposed Class

The typicality requirement is met if the claim arises "from the same event or . . . course of conduct that gives rise to the claims of other class members, and . . . [is] based upon the same legal theory." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 79 (D. Md. 1991). The typicality requirement is a safeguard against interclass conflicts, ensuring that the named plaintiff's interests are more or less co-extensive with those of the class. *Id.* As the court explained in *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 312-13 (E.D. Va. 2007), "[a] representative's claim is 'typical' when the class representative is 'part of the class and possess[es] the same interest and suffer[s] the same injury as the class members.'"

However, typicality does not "require that members of the class have identical factual and legal claims in all respects." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). Thus, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). Due process requires only

- 14 -

that the interests of the party representing a class be substantially similar to those of the unrepresented parties. *Broussard*, 155 F.3d at 338.

Here, Plaintiff satisfies the typicality requirement because, like other members of the proposed Class, she seeks to hold BKC liable for having engaged in an allegedly deceptive and unfair trade practice relating to the Croissan'wich BOGO coupon. Accordingly, Plaintiff's claims arise out of the same violations of law as those of other Class members, meeting the core principles of typicality.

### 4.     Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s adequacy requirement "is meant to protect the due process rights of absent class members who will be conclusively bound by the judgment in this case." *Shiring*, 244 F.R.D. at 315. Adequacy is amply satisfied here because Plaintiff's interests are not antagonistic to those of other Class members, and Plaintiff's counsel are qualified, experienced, and fully able to conduct this litigation. *See, e.g.*, *BearingPoint*, 232 F.R.D. at 541.

When the plaintiff has "'a sufficient interest in the outcome of the case to ensure vigorous advocacy'" and does not have interests "'antagonistic to those of the proposed class,'" the adequacy requirement is met. *Shiring*, 244 F.R.D. at 315. Here, as discussed *supra*, Plaintiff was overcharged for a Croissan'wich when using a BOGO coupon offered by BKC during the Class Period and was injured by the same deceptive conduct that injured all proposed Class members. Thus, Plaintiff's interest in establishing BKC's liability and obtaining the best possible recovery is aligned with the interests of absent Class members. *See, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000).

Among other responsibilities throughout the litigation so far, Plaintiff has conducted her own investigation of BKC's practices by visiting BKC franchise restaurants in Virginia, Maryland, and

- 15 -

the District of Columbia, provided her documents to her counsel, reviewed pleadings in this action,

supervised and monitored the progress of court proceedings, and participated in discussions with her

counsel concerning case and settlement developments.   This active engagement in the litigation

demonstrates Plaintiff's adequacy.   *Shiring*, 244 F.R.D. at 316 (adequacy analysis considered

whether plaintiff initiated and supervised litigation, and whether plaintiff was knowledgeable about,

among other things, the complaint's allegations and defendants); *see also Mills*, 257 F.R.D. at 108.

Plaintiff also has engaged qualified, experienced, and capable attorneys who have an

excellent track record in prosecuting complex consumer class actions such as this litigation.   *See*

Davidson Decl., Ex. 2; *see also* www.rgrdlaw.com.   As their actions in this case and others

demonstrate, Plaintiff's chosen counsel have vigorously prosecuted this action on behalf of the Class

and have negotiated an exceptional and appropriate settlement to resolve this action on behalf of all

Class members while preserving Class members' right to seek damages, if they choose to do so.   As

a result, Plaintiff's counsel have fully, fairly and more than adequately represented the interests of

the Class.

In sum, Plaintiff is well-suited to represent the Class, has no interests antagonistic to other

Class members and, like other Class members, and has been injured by BKC's allegedly deceptive

conduct during the Class Period.   No unique defenses apply to Plaintiff.   Plaintiff is thus willing and

able to prosecute this action on behalf of the Class and "will fairly and adequately protect the

interests of the class."   *See* Fed. R. Civ. P. 23(a)(4).

### C.     The Requirements of Rule 23(b) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), a purported class action must also

satisfy at least one of the conditions of Rule 23(b).   Plaintiff seeks class certification for settlement

purposes under Rule 23(b)(2).

Rule 23(b)(2) certification, which requires "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[,]" is appropriate for effectuating a group remedy. *See Stoffels v. SBC Commcn's, Inc.*, 238 F.R.D. 446 (W.D. Tex. 2006). Under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see* 7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Federal Rules of Civil Procedure* §1775 (3d ed. 2017).

Rule 23(b)(2) certification examines a defendant's uniform, generally applicable conduct (which is clearly what Plaintiff alleges to be the case with BKC's Croissan'wich BOGO program), rather than on the individual reactions or transactions of individual class members relating to that conduct, which is when individual questions may arise. *Leszczynski*, 176 F.R.D. at 673. Rule 23(b)(2) classes are mandatory, binding, provide no opt-out rights, and do not require that notice be given to class members.[5] Fed. R. Civ. P. 23(b)(2); *see Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466, 473 (S.D. Fla. 2002) ("the purpose of Rule 23(b)(2) . . . is to finally resolve class disputes."); *see also Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975) (stating that allowing a (b)(2) class to be certified and opt out of a potential judgment would "permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication."); David F. Herr, *Manual on Complex Litigation*, Annotated, §21.24 (2017).

---

[5]   Pursuant to the Settlement Agreement, BKC has the right to terminate the agreement should the Court determine that notice should be given to the Class. *See* Davidson Decl., Ex. 1, ¶4.10.

In this instance, Plaintiff seeks certification of a Rule 23(b)(2) Class for injunctive relief which precisely addresses the central concern Plaintiff alleges with respect to BKC's Croissan'wich BOGO program.  The central allegation of Plaintiff's suit is that BKC has acted in a consistent manner toward all members of the Class, by charging them more for two Croissan'wich items using a BOGO coupon than they would have paid for the higher-priced Croissan'wich.  The Settlement obviates this concern by enjoining BKC from continuing or reinstituting this problem.  The heart of the Settlement Agreement is the injunctive relief, which provides a clear, unambiguous injunction that applies nationwide and is generally applicable to all Class members.

Class certification under Rule 23(b)(2) is further called for because it is the most sensible approach to resolving this case in light of the small damages amounts per Class member.  Providing notice and extremely minimal dollar (or cents) amounts to hundreds of thousands of Class members makes no practical sense: the expenses necessary to provide them individual notice and opt-out rights (which Rule 23(b)(3) requires) and the transaction costs and potential hassle of each Class member's negotiating a settlement check for, in many instances, less than $1.00 dwarf the benefits of any Rule 23(b)(3) monetary relief class would or could provide.  The efficiencies which Rule 23 is to promote would be lost.  In short, in both form and substance, nationwide certification under Rule 23(b)(2) is the most effective and practical way to handle this litigation. Clearly, on balance, class certification under Rule 23(b)(2) for settlement purposes is most appropriate and certainly warranted under the present circumstances of this case.[6]

---

[6]   In the Settlement Agreement, BKC has reserved its right to challenge class certification for litigation purposes should the Settlement not be approved.

## IV.    PLAINTIFF'S COUNSEL'S ANTICIPATED FEE AND EXPENSE AWARD REQUEST IS REASONABLE

Although Plaintiff's counsel's formal request for an award of attorneys' fees and expenses will not be made until Plaintiff seeks final approval of the proposed Settlement, the amount of Plaintiff's counsel's request – $185,000 in attorneys' fees and up to $10,000 in expenses[7] – is nonetheless very modest and reasonable.

The amount Plaintiff's counsel will seek will, by the time of the fairness hearing, likely be a multiplier of 2x lodestar, if not less.  The Fourth Circuit has expressly approved such modest multipliers of class counsel's lodestar, agreed to by the parties, when reviewing for abuse of discretion a district court's attorneys' fee award in connection with a class action settlement for permanent injunctive relief, as here.  *See Berry v. Schulman*, 807 F.3d 600, 616-19 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016) (approving 1.99 multiplier where "class counsel's fee was negotiated by the parties, and the Agreement allowed for a total attorneys' fee award of up to $5.5 million to be paid entirely by [the defendant,]" and finding that "given the size of the (b)(2) Class and the fragility of [plaintiff's] legal position, there was never any realistic possibility of class-wide monetary relief; put bluntly, there is no reason to think that class counsel left money on the table in negotiating this Agreement.").

And, the amount Plaintiff's counsel will seek in fees is, indeed, appropriate.  Plaintiff and her counsel negotiated an early resolution of this case that saves a tremendous amount of attorney and Court resources, and, more importantly, benefits the Class and all future Burger King customers who, by virtue of the injunction obtained, will no longer be at risk of paying more than they should be when using a BOGO coupon.  Based on the investigation of BKC and the discovery taken in this

---

[7]    Settlement Agreement, ¶6.1.

case by Plaintiff, Plaintiff estimates that the total damages suffered by the Class during the Class Period was approximately $525,000, or less than $1.00 for each aggrieved Class member.  By filing her lawsuit, and negotiating the proposed Settlement, Plaintiff and her counsel ensured that Class members and future Burger King customers would not be similarly damaged for months if not years to come,[8] while at the same time taking into account the inherent difficulties in locating Class members and distributing several cents to each of them (which would cost more to mail the actual checks).

Moreover, Plaintiff and her counsel negotiated a remarkable provision in the Settlement whereby BKC agreed, without a classwide damages release, to pay individual Class members ***more than their likely damages*** if they present documentation showing that they overpaid (entitling the Class member to $5.00 in cash), or sign a sworn statement that they overpaid (entitling the Class member to a $2.00 gift card).  By all measures, the proposed Settlement here is not only a perfect resolution for this case, it more than justifies Plaintiff's counsel's forthcoming request for an award of fees and expenses.

## V.     CONCLUSION

Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the proposed Class; and (3) schedule a Settlement Hearing.[9]

---

[8]    Assuming consistency of BOGO redemptions over the next several years, through this lawsuit and Settlement and based on simple mathematics, Plaintiff and her counsel saved the Class and future Burger King customers several million dollars.

[9]    For the Court's convenience, a proposed form of Preliminary Approval Order – which has previously been reviewed and approved as to form by all parties – is submitted herewith.  Assuming the Court's preliminary approval of the Settlement, the Court will need to fill in the date and time of the final approval hearing (the "Settlement Hearing") at ¶6 of the Preliminary Approval Order. (Other dates in the Preliminary Approval Order are keyed off the date of the Settlement Hearing or entry of the Preliminary Approval Order.)  To allow sufficient time for Class members to comment

on the proposed Settlement, Plaintiff respectfully proposes that the Court schedule the Settlement Hearing on a date approximately 100 calendar days after the execution of the Preliminary Approval Order.

DATED:  October 11, 2017

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
(*Pro Hac Vice*)
sdavidson@rgrdlaw.com
CHRISTOPHER GOLD
(*Pro Hac Vice*)
cgold@rgrdlaw.com


                  *s/ Stuart A. Davidson*
——————————————————————
            Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROXANA PIERCE
(*Pro Hac Vice* Pending)
rpierce@rgrdlaw.com
1701 K Street NW, Suite 350
Washington, DC  20036
Telephone: 202/822-6762
202/828-8528 (fax)

SILVERMAN THOMPSON SLUTKIN &
  WHITE LLC
STEVEN D. SILVERMAN (Bar No. 22887)
ssilverman@mdattorney.com
WILLIAM N. SINCLAIR (Bar No. 28833)
bsinclair@mdattorney.com
201 N. Charles St., Suite 2600
Baltimore, MD 21201
Telephone:  410/385-2225
410/547-2432 (fax)

Attorneys for Plaintiff and the Classes

1317268_1

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 11, 2017.

       *s/ Stuart A. Davidson*
       STUART A. DAVIDSON
       ROBBINS GELLER RUDMAN
        & DOWD LLP
       120 East Palmetto Park Road, Suite 500
       Boca Raton, FL  33432
       Telephone:  561/750-3000
       561/750-3364 (fax)

       E-mail:  sdavidson@rgrdlaw.com

1317268_1